# In the United States Court of Federal Claims

No. 18-556C

(E-Filed:  May 3, 2018)[1]

|  |  |  |
|---|---|---|
| MANAGEMENT & TRAINING CORP., | ) ) ) ) | |
| Plaintiff, | ) ) | Bid Protest; Motion to Dismiss for |
| v. | ) ) | Lack of Standing, RCFC 12(b)(1). |
| THE UNITED STATES, | ) ) ) | |
| Defendant. | ) | |

Alex P. Hontos, Minneapolis, MN, for plaintiff.  Daniel D. Falknor and Phil Steger, Minneapolis, MN, of counsel.

Antonia R. Soares, with whom were Chad A. Readler, Acting Assistant Attorney General, Robert E. Kirschman, Jr., Director, Franklin E. White, Jr., Assistant Director, United States Department of Justice, Washington, DC, for defendant.  Dennis Adelson, Peter Dickson, and Vijaya Surampudi, Office of the Solicitor, United States Department of Labor, of counsel.

OPINION AND ORDER

CAMPBELL-SMITH, Judge.

The court has before it defendant's motion to dismiss, ECF No. 16, which is brought pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal

---

[1]     This opinion was issued under seal on April 30, 2018.  Pursuant to ¶ 4 of the ordering language, the parties were invited to identify source selection, proprietary or confidential material subject to deletion on the basis that the material was protected/privileged.  No redactions were proposed by the parties.  Thus, the sealed and public versions of this opinion are identical, except for the publication date, this footnote and the correction of one typographical error.

Claims (RCFC).  The motion has been fully briefed, as follows:  (1) defendant's motion to dismiss and appendix, ECF Nos. 16 and 16-1; (2) plaintiff's response, ECF No. 17; and, (3) defendant's reply and appendix, ECF Nos. 18 and 18-1.  For background purposes, the court has also considered the complaint, ECF No. 1, plaintiff's memorandum and exhibits in support of its application for a temporary restraining order and/or preliminary injunction, ECF No. 5, and plaintiff's supplemental brief and exhibits, ECF Nos. 12 and 12-1.  Oral argument was deemed unnecessary.  For the reasons set forth below, defendant's motion is **GRANTED** and the complaint is **DISMISSED**.

I.      Factual Background

        The award that underlies this protest is for contracted services for the operation of the Gary Job Corps Center (Gary) in San Marcos, Texas.  ECF No. 1 at 1.  There are actually two procurements concerning Gary that provide the background for this dispute.  One is a longer term five-year contract for the operation of Gary that was solicited, first, on August 9, 2016, which resulted in a contract award to Adams and Associates (Adams).  ECF No. 16-1 at 102.  That contract was awarded on October 30, 2017 and was scheduled for a term of January 1, 2018 through December 31, 2022, with an initial phase-in period of December 1-31, 2017.  Id.  The contract award, however, provoked a Government Accountability Office (GAO) protest brought by Management & Training Corporation (MTC), the incumbent contractor at Gary.  Id.

        After the procuring agency, the United States Department of Labor (DOL), decided to take corrective action, MTC's protest was dismissed as academic on December 6, 2017.  Id.  Past performance of all offerors was then re-evaluated by DOL and Adams was again selected as the awardee.  Id.  The contract won by Adams was modified to start the phase-in period as of February 1, 2018; however, performance of the modified contract was interrupted by a second GAO protest brought by MTC.  Id.

        In response to MTC's second protest, DOL again proposed corrective action, and also, according to the complaint, canceled the award to Adams.  ECF No. 1 at 5; see also ECF No. 5 at 85 (describing the selection decision in favor of Adams as "void").  MTC's second protest was dismissed by the GAO as academic.  ECF No. 1 at 6.  MTC continues to operate Gary under extensions of its incumbent contract through April 30, 2018.  ECF No. 12 at 2-3; ECF No. 16-1 at 102.  Thus, at this moment in time, DOL has not successfully completed its procurement for the next longer term contract for an operator of Gary, and is in the process of taking corrective action regarding its consideration of proposals received in response to the solicitation issued in 2016.  See ECF No. 17 at 3 (stating that "MTC's bid is still under consideration by DOL after DOL's second round of corrective action for the full five-year contract to operate the Gary JCC.").

        The court turns to the other procurement activity that underlies this suit.  DOL, in March of 2018, solicited bids from a pool of recipients of Indefinite Delivery Indefinite Quantity (IDIQ) contract awards to operate Gary on an interim basis after MTC's

contract expires on April 30, 2018.  ECF No. 16-1 at 102; ECF No. 12-1 at 96.  The "Contingency Contract Vehicle (CCV)" may be used to increase competition for interim services when a Job Corps Center's longer term contract award is delayed by bid protests.  ECF No. 16 at 1; ECF No. 16-1 at 102; see also ECF No. 5 at 7 ("The purpose of the CCV was to obtain operators of a DOL Job Corps Center . . . in a contingency-type situation.").  The CCV IDIQ competition provided DOL with fourteen contractors ready to step in to operate a Job Corps Center on an interim basis.  ECF No. 16 at 1-2.  MTC is one of these CCV IDIQ contractors.  Id. at 1.

As a result of this competition, DOL selected Res-Care, Inc. (Res-Care) as the CCV contractor to perform the task order services at Gary.  ECF No. 1 at 1-2.  The phase-in period is taking place in April 2018, with Res-Care operating Gary from May 1, 2018 through September 30, 2018 as an initial performance period, with an additional six month option period available, if exercised.  ECF No. 16-1 at 102-03.  MTC was not informed of this task order competition, although the other thirteen CCV contractors were.  ECF No. 16 at 2.  MTC filed a protest of the task order award to Res-Care on April 5, 2018 at the GAO.  ECF No. 1 at 1-2.

DOL did not halt performance of Res-Care's task order or issue a stop work order in response to MTC's protest.  ECF No. 1 at 2.  MTC filed a bid protest in this court on April 17, 2018 challenging the agency's failure to stay contract performance by Res-Care in response to MTC's GAO protest.  DOL filed a justification of its override of the automatic stay provided by the Competition in Contracting Act, 31 U.S.C. § 3553(d)(3)(A) (2012) (CICA stay), at the GAO on April 19, 2018, and filed its justification of the CICA stay override in this court on April 20, 2018.  ECF No. 16 at 3; ECF No. 12 at 2.  Motions to dismiss, alleging MTC's lack of standing to protest the task order award to Res-Care, have been filed in both fora, on April 18, 2018 at the GAO, and on April 23, 2018 in this court.  ECF No. 16 at 1-2.  The court reserves discussion of other relevant facts for the analysis section of this opinion.

II.   Legal Standards

A.   Standard of Review for Motions Brought Under RCFC 12(b)(1)

When reviewing a complaint to determine its jurisdiction over a plaintiff's claims, this court must presume all undisputed factual allegations to be true and construe all reasonable inferences in favor of the plaintiff.  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), abrogated on other grounds by Harlow v. Fitzgerald, 457 U.S. 800 (1982); Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 747 (Fed. Cir. 1988) (citations omitted).  However, "[a] trial court may weigh relevant evidence when it considers a motion to dismiss that challenges the truth of jurisdictional facts alleged in a complaint."  Ferreiro v. United States, 350 F.3d 1318, 1324 (Fed. Cir. 2003) (citations omitted).  Plaintiff bears the burden of establishing subject matter jurisdiction, Alder Terrace, Inc. v. United States, 161 F.3d 1372, 1377 (Fed. Cir. 1998) (citing McNutt v. Gen. Motors

Acceptance Corp. of Ind., 298 U.S. 178, 189 (1936)), and it must do so by a preponderance of the evidence, Reynolds, 846 F.2d at 748 (citations omitted).  If jurisdiction is found to be lacking, this court must dismiss the action.  RCFC 12(h)(3).

      B.     Bid Protest Standing

     As a threshold jurisdictional matter, the plaintiff in a bid protest must show that it has standing to bring the suit.  Info. Tech. & Applications Corp. v. United States, 316 F.3d 1312, 1319 (Fed. Cir. 2003) (ITAC); Myers Investigative & Sec. Servs., Inc. v. United States, 275 F.3d 1366, 1369 (Fed. Cir. 2002) (citation omitted).  Standing arises from prejudice, which is present if the plaintiff establishes that it is an interested party with a direct economic interest in the procurement.  ITAC, 316 F.3d at 1319 (citing Am. Fed'n of Gov't Employees v. United States, 258 F.3d 1294, 1302 (Fed. Cir. 2001) (AFGE)).  Bid protest standing is limited to those plaintiffs who are "'actual or prospective bidders or offerors whose direct economic interest would be affected by the award of the contract or by the failure to award the contract.'"  Weeks Marine, Inc. v. United States, 575 F.3d 1352, 1359 (Fed. Cir. 2009) (quoting AFGE, 258 F.3d at 1302).

     There are two prongs to the test for bid protest standing in the post-award context.  The protestor must "establish that it (1) is an actual or prospective bidder, and (2) possesses the requisite direct economic interest."  Rex Serv. Corp. v. United States, 448 F.3d 1305, 1307 (Fed. Cir. 2006) (citing Myers, 275 F.3d at 1369).  Generally, to show direct economic interest, the protestor must have had a substantial chance of winning the contract requirement but for the errors in the procurement.  See id. at 1308 (citing Myers, 275 F.3d at 1370; Statistica, Inc. v. Christopher, 102 F.3d 1577, 1582 (Fed. Cir. 1996)).  In some procurement scenarios, direct economic interest may be established by the fact that a qualified contractor was "deprived of the opportunity to compete" for the procured services.  Distributed Sols., Inc. v. United States, 539 F.3d 1340, 1345 (Fed. Cir. 2008) (Distributed).

III.    Analysis

     The dispute as to MTC's standing to bring this bid protest is straightforward under binding precedent.[2]  In essence, two factual hypotheses might establish standing for MTC

---

[2]     The court promised the parties to render a decision within a short time-frame, and truncates its analysis to keep that promise.  Although both parties rely on decisions of this court, none of the fact patterns in those cases is analogous to this case, and the court has found the Court of Federal Claims cases cited by the parties to be unhelpful.  Given the need for a timely decision, the distinguishable fact patterns of the cited cases, and the rule that decisions of this court are not binding precedent for this case, e.g., W. Coast Gen. Corp. v. Dalton, 39 F.3d 312, 315 (Fed. Cir. 1994), the court restricts its standing analysis

in these circumstances.  First, plaintiff could argue that MTC was a prospective bidder and had a substantial chance of winning the CCV task order award that was won by Res-Care.  <u>Myers</u>, 275 F.3d at 1370 (stating that "the substantial chance rule continues to apply").  Second, plaintiff could argue that MTC was a prospective bidder on a different type of contract vehicle for interim services at Gary, that DOL deprived MTC of an opportunity to compete for such a contract, and that this deprivation of a competitive opportunity confers standing on MTC under <u>Distributed</u>.  <u>See</u> 539 F.3d at 1345 (stating, under the facts of that appeal, that the deprivation of "the opportunity to compete" for services never procured directly by the government showed that the appellants possessed "a direct economic interest in the government action at issue").  Neither of these hypotheses is supported by the factual record before the court, which is undisputed, in relevant part, by plaintiff.

      A.     Substantial Chance Requirement Not Satisfied

Plaintiff barely addresses the question of whether MTC had a substantial chance of winning the task order awarded to Res-Care.  Indeed, the only sentence in plaintiff's response brief that squarely addresses this issue is as follows:

> And MTC likely would have prevailed over Res-Care: in both prior procurements for the full five-year contract to operate the Gary JCC, the agency rated MTC higher than Res-Care overall.

ECF No. 17 at 3 (citing ECF No. 5 at 70).  This statement does not address the central issue posed by the government's motion to dismiss.  As a CCV contractor, MTC is prohibited from competing for any interim services task order for operating a Job Corps Center for which it is the incumbent contractor.  <u>See</u> ECF No. 16-1 at 15, 65 ("It is understood and agreed that if an awardee operates a Center for which operation is being changed, the incumbent is ineligible for award of the task order.").

Thus, the court finds that because MTC was not eligible for the task order competition for Gary, it did not have a substantial chance of winning the task order.  Indeed, MTC had <u>no</u> chance of winning the task order.  Under <u>Myers</u>, MTC lacks standing to protest the award of the task order to Res-Care.

      B.     MTC Does Not Have Standing under <u>Distributed</u>

The court begins with a review of the <u>Distributed</u> litigation.  Acquisition of software and related services was contemplated by the government, as part of a larger project.  <u>Distributed</u>, 539 F.3d at 1342.  Rather than following through on a direct

---

to binding precedent, supplemented by guidance from a GAO decision that is factually indistinguishable from this case.

purchase procurement, the government chose to assign this software acquisition task to one of its project contractors, which then competed subcontracts to fulfill this need. Id. at 1343.

Disappointed potential software vendors lodged a protest, alleging that the government violated statutes and regulations when it delegated the acquisition function to the project contractor. Id. at 1344-45. This court found, because the government never "commence[d] acquisition" of the software services, "that a Federal agency procurement [wa]s not at issue." Distributed Sols., Inc. v. United States, 76 Fed. Cl. 524, 527-28 (2007) (citations omitted), rev'd, 539 F.3d 1340 (Fed. Cir. 2008). The protest was dismissed for lack of jurisdiction, and the issue of standing was not addressed by the trial court. Id.

On appeal, the primary holding of the United States Court of Appeals for the Federal Circuit was that the government's decision to change course from a direct acquisition of software to an assignment of that acquisition task to its project contractor was a government action in connection with a proposed procurement. Distributed, 539 F.3d at 1343-46. The government's solicitation of information from outside vendors, accompanied by its ultimate decision to incorporate the acquisition task within the scope of its project coordinator's contract, constituted "pre-procurement decisions" subject to protest under 28 U.S.C. § 1491(b) (2012). Id. at 1346. On this ground the Federal Circuit reversed the trial court. Id.

In the course of its analysis, the Federal Circuit also found that the appellants possessed standing to bring their protest, fulfilling both prongs of the test for standing. Id. at 1344-45 (citing Rex, 448 F.3d at 1307). First, the protestors "established themselves as prospective bidders in that they submitted qualifying proposals in response [to the government's request for information] and, according to their complaint, were prepared to submit bids." Id. at 1345. Second, the Federal Circuit found that the appellants "possess[ed] a direct economic interest in the government action at issue in that they were both deprived of the opportunity to compete for the provision of acquisition and assistance solutions for [the project]." Id.

The discussion of standing in Distributed is very brief and contains no guidance as to the particularity or breadth of any nuanced test for standing that might be discerned therein. Indeed, although the Federal Circuit has often relied on Distributed for its primary holding regarding the types of government actions which may be protested, e.g., AgustaWestland N. Am., Inc. v. United States, 880 F.3d 1326, 1330 (Fed. Cir. 2018), the discussion of standing in Distributed has never been cited in another Federal Circuit decision. In the court's view, Distributed applies established Federal Circuit precedent regarding bid protest standing to the facts of that case, but its discussion of standing has limited usefulness in other factual scenarios.

The only principle regarding standing that is made clear in <u>Distributed</u> is that the deprivation of an opportunity to compete may, in some circumstances, indicate that a protestor possesses a direct economic interest in a procurement, as required by the second prong of the bid protest standing test.  That test, as stated in <u>Rex</u>, holds that the protestor must "establish that it (1) is an actual or prospective bidder, and (2) possesses the requisite direct economic interest."  448 F.3d at 1307 (citing <u>Myers</u>, 275 F.3d at 1369). The particular facts of a case determine whether a contract award in a narrowed competition may be protested by an excluded contractor, whose standing derives from the protestor's substantial chance of obtaining a contract award in a less exclusive competition.  <u>See, e.g.</u>, <u>Tinton Falls Lodging Realty, LLC v. United States</u>, 800 F.3d 1353, 1360 (Fed. Cir. 2015) (<u>Tinton Falls</u>) ("In short, the question of standing hinges on whether Tinton Falls could compete for [an unrestricted] reopened bid if it wins its protest of the initial contract award."); <u>see also id.</u> at 1360 n.3 ("We hold only that under the particular facts of this case, the Claims Court did not clearly err in finding that Tinton Falls had a substantial chance of winning a reopened bid [with substantially different eligibility requirements] should it prevail in its bid protest.").

As explained in <u>Myers</u>, a protestor seeking a "rebid" of a narrow competition "need only establish that it 'could compete for the contract' if the bid process were made <u>competitive</u>."  275 F.3d at 1370 (emphasis added) (quoting <u>Impresa Construzioni Geom. Domenico Garufi v. United States</u>, 238 F.3d 1324, 1334 (Fed. Cir. 2001)).  In one subset of these "rebid" protests, the Federal Circuit has emphasized that the protestor of a sole-source contract award may establish prejudice, and standing, <u>if</u> it has a substantial chance of receiving a contract award in a more <u>competitive</u> procurement process:

> A disappointed party can establish prejudice . . . by showing [that] proceeding without the violation would have made the procurement official's decision to make a sole-source award <u>rather than to conduct a competitive bidding process</u> irrational, and in a <u>competitive</u> bidding process, the complaining party would have a substantial chance of receiving the award[.]

<u>Emery Worldwide Airlines, Inc. v. United States</u>, 264 F.3d 1071, 1086 (Fed. Cir. 2001) (<u>Emery</u>) (emphasis added) (citations omitted).  Considering these authorities -- namely <u>Distributed</u>, <u>Myers</u>, <u>Emery</u>, and <u>Tinton Falls</u> -- a protestor may satisfy the "direct economic interest" requirement for standing when the government agency's limitations on competition are challenged in order to give the protestor a substantial chance of winning a contract in a more competitive selection process.

It would turn this type of standing analysis on its head to conclude that MTC has standing for its protest before GAO.  DOL invested many months recruiting and selecting IDIQ contractors for its CCV contractor pool.  This competitive process produced thirteen CCV contractors eligible to compete for the interim services task order for Gary. DOL then solicited bids from the eligible CCV contractors to obtain, competitively, the most advantageous offers.  Res-Care was selected through this competitive process and is

transitioning to perform at Gary.  This is neither a sole-source award, nor a particularly narrow or limited competitive process.

MTC's protest, on the other hand, seeks to replace that competitive process, and Res-Care, with an extension of MTC's sole-source contract so that, without any competition whatsoever, MTC can continue to perform at Gary until its latest protest at the GAO is concluded.  See ECF No. 12 at 3 (suggesting that MTC's latest sole-source contract should be extended); see also ECF No. 18-1 at 42 (extension clause in MTC's latest sole-source contract).  Under these facts, MTC, a participant in the CCV competition and a beneficiary of robust competition in that regard, asserts that it has standing to cut off any further competition so that it may continue to monopolize the contracting opportunity at Gary.  This does not fit within the standing framework applied in Distributed or in the other Federal Circuit decisions discussed in this opinion.  Under Distributed and other binding precedent, MTC does not have standing to challenge DOL's award to Res-Care.

C.      GAO Decision on Indistinguishable Facts

Both parties cite to a GAO decision which the court finds persuasive.  See MINACT, Inc., B-414615, B-414615.2, 2017 CPD ¶ 221, 2017 WL 3001422 (Comp. Gen. July 12, 2017).  The facts in MINACT are indistinguishable from the facts of the instant case.  In MINACT, an incumbent Job Corps Center contractor, MINACT, Inc. (MINACT), was operating that center through a sole-source contract.  2017 WL 3001422, at *2.  As that sole-source contract reached the end of its term, DOL chose to compete interim services for the center through the CCV vehicle.  Id.

MINACT, a CCV contractor for DOL, did not receive the task order and protested the task order award at the GAO.  Id.  DOL moved to dismiss the protest on the grounds that MINACT was ineligible for the task order due to its incumbency and due to an exclusionary clause in its CCV contract similar to the one at issue in the instant protest.  Id. at *2-3.  The GAO agreed with DOL and found that MINACT was not an interested party and thus lacked standing to protest the award of the task order to an eligible CCV contractor.  Id. at *3.  The court finds the GAO's reasoning to be persuasive and follows that decision in this case.[3]

---

[3]      Plaintiff's attempt to distinguish MINACT, on the basis that MTC's GAO protest challenges the legality of the exclusionary CCV clause and MINACT's protest did not, is not well taken.  See ECF No. 17 at 8.  Although the "legality" issue is raised in a footnote in MTC's GAO protest, ECF No. 18-1 at 91, and may not have been raised in the MINACT protest, the "legality" challenge to the CCV contract clause is barred on timeliness grounds.  See infra.

### D.     Untimely Protest

The court notes that another threshold problem affects MTC's GAO protest. According to GAO timeliness rules, "challenges which go to the heart of the underlying ground rules by which a competition is conducted, should be resolved as early as practicable during the solicitation process, but certainly in advance of an award decision if possible, not afterwards." Caddell Constr. Co., B-401281, 2009 CPD ¶ 130, 2009 WL 1771287, at *3 (Comp. Gen. June 23, 2009); see also 4 C.F.R. § 21.2 (2017) ("Protests based upon alleged improprieties in a solicitation which are apparent prior to bid opening or the time set for receipt of initial proposals shall be filed prior to bid opening or the time set for receipt of initial proposals."). The clause in MTC's CCV contract which excludes MTC from competing for an interim CCV task order to manage Gary, i.e., the contract term which produced the result which plaintiff now alleges is "illegal," ECF No. 17 at 7-8, could have been protested by MTC, before its CCV award, but was not, as evidenced by MTC's CCV contract. Further, the CCV IDIQ competition was contemporaneous with the competition for the longer term contract at Gary, where MTC was both a bidder on the new longer term contract and the incumbent contractor. See ECF No. 16-1 at 59, 102. MTC cannot claim that it did not know that its CCV contract contained a clause that would eliminate its eligibility for a CCV task order at Gary.

Thus, no protest regarding the legality of that contract clause, ECF No. 16-1 at 65, is timely before the GAO so many months after the CCV contract was awarded to MTC in 2016. Such a timeliness problem is a threshold issue. See, e.g., COMINT Sys. Corp. v. United States, 700 F.3d 1377, 1383 (Fed. Cir. 2012) (finding that a protest of a contract requirement that was known to the protestor before award was waived after award); Blue & Gold Fleet, L.P. v. United States, 492 F.3d 1308, 1313 (Fed. Cir. 2007) ("We also hold that a party who has the opportunity to object to the terms of a government solicitation containing a patent error and fails to do so prior to the close of the bidding process waives its ability to raise the same objection subsequently in a bid protest action in the Court of Federal Claims."); Armorworks Enters., LLC, B-400394, B-400394.2, 2008 CPD ¶ 176, 2008 WL 4415709, at *4 (Comp. Gen. Sept. 23, 2008) ("Where alleged improprieties do not exist in the initial solicitation, but are subsequently incorporated into the solicitation (e.g., via an amendment to the solicitation), they must be protested not later than the next closing time for receipt of proposals following the incorporation.") (citations omitted). Because MTC's challenge to its ineligibility for the CCV task order award is untimely under these authorities, the GAO's timeliness rule provides an additional reason for the court to grant defendant's motion to dismiss MTC's protest in this court.

## IV.     Conclusion

For the reasons stated in this opinion, MTC's bid protest must be dismissed because MTC is not an interested party and lacks standing to bring this action. Further, even if the court's standing analysis is incorrect, plaintiff's ineligibility for the task order

competition, along with its waiver of any challenge to the contract clause which eliminates it from consideration for the task order competition, compel a finding that plaintiff has not met its burden to show likelihood of success on the merits of its challenge to DOL's override of the CICA stay.  Thus, plaintiff's application for a temporary restraining order and/or preliminary injunction, ECF No. 4, must be denied.

Accordingly,

(1)     Plaintiff's Application for a Temporary Restraining Order and/or Preliminary Injunction (ECF No. 4), filed April 17, 2018, is **DENIED**;

(2)     Defendant's Motion to Dismiss (ECF No. 16), filed April 23, 2018, is **GRANTED**;

(3)     The clerk's office is directed to **ENTER** final judgment **DISMISSING** plaintiff's complaint, without prejudice, for lack of subject matter jurisdiction; and

(4)     On or before **May 14, 2018**, the parties shall **CONFER** and **FILE** a **Proposed Redacted Version** of this opinion, with any competition-sensitive or otherwise protectable information blacked out.

IT IS SO ORDERED.


s/ Patricia Campbell-Smith
PATRICIA CAMPBELL-SMITH
Judge